UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIKTOR BORISOVICH TAIROV,<br><br>                Petitioner,<br><br>   v.<br><br>PAMELA BONDI, *et al.*,<br><br>                Respondents. | Case No. C25-1558-RSM-MLP<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION

Petitioner Viktor Borisovich Tairov seeks relief from his detention via a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. # 1.) Respondents Pamela Bondi, Kristi Noem, Cammilla Wamsley, the Warden of the Immigration Detention Facility, and the United States Department of Homeland Security (together, "Respondents") have filed a return (dkt. # 8), to which Petitioner has filed a response (dkt. # 11). Respondents did not file a reply.[1] After reviewing the parties' submissions and applicable law, this Court concludes that Petitioner's habeas petition (dkt. #1) should be GRANTED and that Petitioner should be released under reasonable conditions of supervision. This Court's reasoning follows.

---

[1] On December 2, 2025, Petitioner filed a memorandum regarding his detention status, highlighting that he has been detained for over 180 days and that Respondents remain unresponsive. (Dkt. # 12.)

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

### A. Petitioner's Detention History

Petitioner is a native and citizen of Russia. (Rodriguez Decl. (dkt. # 9), ¶ 4; Strong Decl. (dkt. # 10), Ex. A at 2-3.) He entered the United States on a nonimmigrant visitor visa on December 18, 1998, with authorization to remain until December 17, 1999. (Rodriguez Decl., ¶ 5.) On November 12, 1999, he filed an asylum application, which the Immigration and Naturalization Service ("INS") denied on May 31, 2000. (*Id.*, ¶¶ 6-7.) That same day, the INS issued a Notice to Appear, charging Petitioner as removable under 8 U.S.C. § 237(a)(1)(B) for overstaying his visa. (*Id.*) An immigration judge ordered him removed to Russia on February 22, 2002. (*Id.*, ¶ 8.) The Board of Immigration Appeals ("BIA") affirmed that decision on October 28, 2003. (*Id.*; Strong Decl., Ex. C.)

On April 14, 2011, Petitioner was arrested by the Volusia County Sheriff's Office for Domestic Battery and Tampering With a Witness. (Rodriguez Decl., ¶ 10.) He was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") on April 20, 2011, pending removal. (*Id.*, ¶ 11.) ICE submitted a travel document request to the Russian Embassy, which was denied on November 11, 2011. (*Id.*, ¶ 12.) Consequently, Petitioner was released on an Order of Supervision ("OSUP") on November 25, 2011. (*Id.*, ¶ 13.)

Petitioner was briefly detained again around September 17, 2013, but was released a week later on an OSUP after ICE determined that obtaining a travel document was unlikely. (Rodriguez Decl., ¶ 14.) He continued to report to ICE as required. (*Id.*)

In October 2016, ICE mailed a new travel document request to the Russian Embassy. (Rodriguez Decl., ¶ 16.) On January 17, 2017, the Embassy responded, requesting a 1992 Russian address for citizenship verification and instructing that Petitioner must apply in person.

(*Id.*) The record indicates that Petitioner remained on an OSUP and that ICE was unaware of any personal application by him. (*Id.*)

On October 13, 2020, Petitioner was arrested for Assault 4 Domestic Violence in San Juan County, Washington, and placed on GPS monitoring. (Rodriguez Decl., ¶ 17.) On September 8, 2021, ICE noted his compliance with monitoring and reduced his reporting requirements, but also stated that Petitioner "had not been cooperative in obtaining a travel document." (*Id.*) Petitioner was detained again on June 4, 2025, when he appeared for an in-person check-in at the Tacoma ICE facility. (*Id.*, ¶ 19.)

### B. ICE's Efforts to Obtain Travel Documents

In support of their response, Respondents submitted a declaration from Enrique Rodriguez, an ICE Deportation Officer working in the Office of Enforcement and Removal Operations ("ERO"), detailing renewed efforts to remove Petitioner. (Rodriguez Decl.) Mr. Rodriguez states that ICE has obtained copies of Petitioner's passport and birth certificate, along with a prior Russian address, and that "[a]s of October 6, 2025, an updated travel document request, including prior residency information, has been submitted to ERO HQ for review. Upon ERO HQ's approval, the travel document request will be sent to the Russian Embassy for processing." (*Id.*, ¶¶ 23-24.) Respondents provide no further details regarding the status of this request.

Mr. Rodriguez further asserts that "ERO Tacoma has experienced Russia issuing travel documents in other cases recently. ERO expects a travel document to be issued in this case." (Rodriguez Decl., ¶ 25.) No additional facts are provided to support this expectation.

REPORT AND RECOMMENDATION - 3

## II. LEGAL STANDARD

Title 8 U.S.C. § 1231 governs the detention of noncitizens, like Petitioner, who have been ordered removed. Under § 1231(a), the Department of Homeland Security ("DHS") must detain a noncitizen during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (a)(2). Here, the removal period began on October 28, 2003, the date Petitioner's removal order became final, and expired on January 26, 2004. 8 U.S.C. § 1231(a)(1)(B)(i).

After the removal period expires, DHS may, at its discretion, continue to detain certain noncitizens, including those who are removable under § 1227(a)(2), or release them under supervision. 8 U.S.C. § 1231(a)(6). Because the BIA affirmed Petitioner's removability under § 1227(a)(2), his detention is statutorily authorized.

Although § 1231(a)(6) authorizes ICE to detain Petitioner, it cannot do so indefinitely. In *Zadvydas v. Davis*, the Supreme Court held that this provision implicitly limits detention to a period reasonably necessary to effect removal and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). The Supreme Court established that detention is "presumptively reasonable" for six months following entry of a final removal order. *Id*. After six months, if the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must rebut that showing with evidence. *Id*. If it fails to do so, the noncitizen is entitled to habeas relief. *Id*.

The six-month presumption is not a strict deadline; a noncitizen may be detained beyond six months if removal remains likely. *Zadvydas*, 533 U.S. at 701. Nevertheless, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

### III. DISCUSSION

Petitioner has been in the United States for nearly 27 years and is entitled to due process protections. *Zadvydas*, 533 U.S. at 693. Having been detained for over six months at this point (dkt. # 1 at 3-5), his detention is no longer "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Moreover, Petitioner's evidence demonstrates that:

(1) ICE failed to deport Petitioner for 14 years after Russia first denied its request for travel documents in 2011 (*see* dkt. ## 1 at 3, 11 at 2; *see also* dkt. # 8 at 4; Rodriguez Decl., ¶¶ 11-12; Strong Decl., Ex. D (2011 OSUP));

(2) ICE detained Petitioner in 2013 and 2025 without securing travel documents, and failed to request any travel documents between June and December 2025 (*see* dkt. ## 1 at 4, 11 at 2-3; *see also* dkt. # 8 at 4-6; Rodriguez Decl., ¶¶ 14, 23-24; Strong Decl., Ex. E (2013 OSUP); dkt. # 12);

(3) Petitioner unsuccessfully attempted to personally obtain travel documents prior to both his 2013 and 2025 detentions (*see* dkt. # 11 at 2-3, Ex. 1 (receipts for mail to Russian Embassy));

(4) After ICE requested travel documents in October 2016, an email response from the Russian Embassy in January 2017 explicitly requested Petitioner's address in the Russian Federation during 1992 and directed that Petitioner "*must personally apply* for a reentry certificate or Russian passport" (Rodriguez Decl., ¶ 16 (emphasis added); *see also* dkt. # 11 at 5, Ex. 2 (Russian Embassy's June 2025 website conditions for a Certificate of Return included requirements such as a personal request, application in Russian, identity verification via valid internal passport or two written Russian citizen statements, and two photographs)); and

      (5)     Russia is classified as an uncooperative country for removals by ICE (*see* dkt. # 11 at 6, Ex. 3 (November 2024 ERO information sheet)).

Accordingly, Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden therefore shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 553 U.S. at 701. The government offers only two assertions in rebuttal: (1) it has obtained Petitioner's passport, birth certificate, and a prior Russian address; and (2) it submitted an updated request to ERO headquarters for review before sending it to the Russian Embassy. (Dkt. # 8 at 5-6; Rodriguez Decl., ¶ 23.)

These representations are insufficient. The government provides little evidence to support its claim that "ERO expects a travel document to be issued." (Rodriguez Decl., ¶ 25.) Merely noting that Russia has issued travel documents in other cases sheds little light on this case. The government also offers no timeline for the request's approval or submission, nor does it explain why this effort will succeed where its past attempts failed. (*See generally* dkt. # 8.) In short, the government fails to rebut Petitioner's showing that removal is not reasonably foreseeable.

Because there is no significant likelihood that Russia will accept Petitioner in the reasonably foreseeable future, his detention is no longer permitted as construed in *Zadvydas*. *See* 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is therefore unlawful and he must be released. *See, e.g., Panfilov v. Bondi*, 2025 WL 3190522, at * 3 (W.D. Wash. Nov. 14, 2025) (allowing release upon a finding that removal was not reasonably foreseeable); *Bernik v. Bondi*, 2025 WL 2638625, at * 3 (W.D. Wash. Aug. 15, 2025) (same); *Hoac v. Becerra*, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (same).

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends GRANTING the petition for a writ of habeas corpus (dkt. #1) and ordering Petitioner's release under appropriate conditions of supervision. A proposed Order and Judgment accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 24, 2025**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Ricardo S. Martinez.

Dated this <u>3rd</u> day of December, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge